Roger SCHNEIDER, Plaintiff-Respondent,

v.

Mark C. DANNEGGER, Defendant-Appellant.

No. 32991.

St. Louis Court of Appeals.

Missouri.

Nov. 19, 1968.

Guilfoil, Caruthers, Symington, Montrey & Petzall, Gordon G. Hartweger, St. Louis, for defendant-appellant.

Lawrence O. Willbrand, St. Louis, for plaintiff-respondent.

WOLFE, Judge.

This is a suit for damages arising out of personal injuries and damage to the plaintiff's automobile. Both were occasioned when the automobile which the plaintiff owned and was driving was struck by the automobile which the defendant was driving. The plaintiff prevailed below and obtained a verdict and judgment in the sum of $84.00 for personal injuries and $900.00 for property damages. Defendant's motion for a new trial was overruled, and in due time thereafter the defendant appealed.

The plaintiff's case was submitted on humanitarian negligence in failing to slacken speed. Only two points are urged by the defendant-appellant. One asserts that the evidence was insufficient to submit plaintiff's case on humanitarian negligence. The other relates to the closing argument of plaintiff's counsel.

The plaintiff had a passenger in his car, now named Joyce Schneider. She also sued the defendant. Her case was tried in January of 1967. She prevailed, and the defendant appealed. The case here considered was tried in April of 1967. Both appeals were joined for the purpose of briefing and argument. The general facts of the case are set out in detail in the case of Schneider v. Dannegger, Mo.App., 435 S. W.2d 413, which is handed down concurrently with this opinion. We shall therefore limit to some extent our statement of facts in the case before us to such variances in the testimony as are relevant to the issue raised.

Schneider was driving his Chevrolet. It was 16 to 18 feet in length. He was traveling east on Link Avenue which is 35 to 40 feet wide. As he reached a point 15 feet from the intersection of Hurstgreen, a north and south street of the same width as Link Avenue, he looked to his left. At that point he could see 50 feet up Hurstgreen Avenue, and he saw no car approaching. He stated that there was a clear view up Hurstgreen for at least 100 feet from the point where he entered the intersection. He did not look at that point but proceeded to cross Hurstgreen at a speed of 5 to 10 m.p.h. His passenger stated that his speed in crossing was 5 m.p.h. When his car was astride the center line of Hurstgreen and the left side of it was 4 feet south of the center line of Link, it was struck by the defendant's car. The passenger in plaintiff's car first saw the lights of defendant's car when it was two car lengths away, and she estimated its speed at 35 m.p.h. The plaintiff first saw defendant's car as it was just entering the intersection and he also estimated its speed to be 35 m.p.h.

The defendant stated in his deposition, offered in evidence by the plaintiff, that he approached the intersection at a constant speed of 15 to 20 m.p.h. He said that he struck a match and lighted a cigarette as he was approaching the intersection and that an ash blew into his eye. He testified that he could look with the other eye, but did not see the plaintiff's car until he was about 6 feet from it. He stated that he had power brakes which were in good operating condition. He had his foot on the brake pedal as he approached the intersection and as soon as he saw the plaintiff he applied the brake and his car slowed some before the impact.

■ As stated, it is the contention of the appellant that plaintiff failed to make a submissible case of humanitarian negligence in failing to slacken the speed of his car. In passing upon this point we must review the evidence in a light most favorable to the plaintiff.

■ The facts required to constitute a situation of humanitarian negligence were set out in Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, in 1924. They have been repeated time after time and this obviates the necessity of stating them again. The first contention of the appellant is that there was no evidence that the plaintiff came into a position of peril in time for the defendant to have avoided the collision. The appealing defendant was charged with the knowledge that the plaintiff was moving at a slow speed into a collision course as he entered the intersection and slowly headed across. Burns v. Maxwell, Mo., 418 S.W. 2d 138; Wyckoff v. Davis, Mo., 297 S.W. 2d 490. The exact place of such immediate danger is for the jury to determine. Burns v. Maxwell, supra; West v. St. Louis-San Francisco Railway Company, Mo., 295 S. W.2d 48, l. c. 51. The jury could well have reached the conclusion that the plaintiff was in a position of peril as he went into the intersection with the fixed purpose of entering the path of appellant's travel.

Accepting 35 feet as the width of the street, the plaintiff traveled 25.5 feet to the point where his car was astride the center line of Hurstgreen. He was going at the rate of 7.3 feet per second if traveling at the speed of 5 m.p.h. It therefore took 3.5 seconds for him to reach the position he was in at the time of the collision.

■ It is the appellant's contention that if he, the defendant, was traveling at the speed of 35 m.p.h. estimated by plaintiff's witnesses he could not have slackened his speed in time to have avoided the collision. Estimates of speed are not judicial admissions and while the plaintiff may not have the benefit of estimates which contradict his own testimony and are at war with the fundamental theory of the case, he is not bound by his own estimates of speed. He may rely upon the defendant's evidence and this is particularly true where, as here, the defendant may have been in a better position to give a more accurate estimate than the plaintiff's witnesses who were sud-

denly confronted with impending danger. Davis v. Kansas City Public Service Co., Mo., 233 S.W.2d 669; Davidson v. King, Mo.App., 309 S.W.2d 132. The jury could have accepted as true the defendant's estimate of his speed at 15 to 20 m.p.h. At 20 m.p.h. he would have been slightly over 100 feet away as the plaintiff entered the intersection, for he would have been traveling at the rate of 29 feet per second toward the point of collision. Allowing ¾ of a second for reaction time, a time of which we take notice in the absence of evidence to the contrary, would reduce his distance in which to slow down to 78 feet. We cannot take judicial notice of stopping distance and there is no evidence of that before us, but we do have the evidence of the defendant that he did slacken his speed to some extent in a distance of 6 feet. His power brakes were "in good operating condition." From this evidence the jury could draw a valid inference that in 78 feet the defendant could have cut his speed sufficiently to permit the plaintiff's car to clear the intersection. Had he reduced it to 5 m.p.h. when ½ the width of the street away, the plaintiff's car would have been beyond the collision point when the defendant's car reached there. We conclude that a submissible case was made by the plaintiff on the failure of the defendant to slacken the speed of his automobile.

As stated, objection is also made to the closing argument of plaintiff's counsel. Counsel for the defendant in his argument had commented on the fact that plaintiff testified that he paid $1,300 to have his car repaired but that he had produced no receipts or canceled checks for that amount. In answer to this plaintiff's counsel started his closing argument by stating:

"According to Mr. Montrey, nothing is ever proved to his satisfaction, but then he's paid to take that attitude."

There was an objection and the court stated:

"Well, the jury may disregard it."

Still on the subject of property damage, plaintiff stated:

"As to property damage he talks about, 'Well, you didn't prove it.' The proof is acceptable by the Court."

At that point counsel for the defendant objected, and the objection was sustained and the jury instructed to disregard the statement. Counsel for the plaintiff continued:

"If the proof is not adequate for your consideration, the Court wouldn't allow it in. There would be an objection and the evidence would not be in."

Again the court directed the jury to follow the instructions of the court and to be guided by the evidence.

Further in his argument counsel said that the plaintiff could have been asked about the payment of $1,300.00 at the time his deposition was taken, or the defendant could have submitted interrogatories. The court sustained objections to all but the last statement which stated facts beyond the record. Defendant's objection should have been sustained.

Derogatory remarks about opposing counsel are always reprehensible. The trial is not a brawl between lawyers and it behooves lawyers who try to make it one to read Lindsey v. P. J. Hamill Transfer Company, Mo.App., 404 S.W.2d 397. The most grave charge about the argument goes to plaintiff's counsel's attempt to make the jury believe that the judge had sanctioned the evidence of the plaintiff. The court took action correcting this. The court could have properly administered a stern rebuke to counsel at that point but he did effectively remove it from the jury's consideration.

■ All of the argument objected to goes to the amount of damages. Plaintiff sought $1,500.00 damages for his automobile and $10,000.00 for personal injuries. The jury awarded $900.00 for property damages and $84.00 for personal injuries, which was the exact amount plaintiff spent for medicine and medical attention. This is not

excessive and the appellant does not contend that it is, so we find that the defendant was not prejudiced by the argument of plaintiff's counsel.

The judgment is affirmed.

ANDERSON, P. J., and RUDDY, J., concur.