Benito J. ENRIQUEZ, Respondent,

v.

CHEMICAL SEALING CORPORATION, and Aetna Casualty and Surety Company, Appellants.

No. 52008.

Supreme Court of Missouri, Division No. 1.

Dec. 12, 1966.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 30, 1966.

James W. Humphrey, Jr., Kansas City, for respondent.

Schwartz, Hoffman & Brockus, Leo T. Schwartz, Kansas City, for appellants, Clarence B. Mitchell, Kansas City, of counsel.

HOUSER, Commissioner.

This is a proceeding under The Workmen's Compensation Law. Chapter 287, V.A.M.S. The Industrial Commission made an award in favor of employee Benito J. Enriquez. The circuit court affirmed the award. The total amount of compensation, medical allowances and interest thereon, as of the date of the judgment of the circuit court from which this appeal is taken, was $15,020.08. Employer claims nothing is due. We have jurisdiction by reason of the amount in dispute. Constitution of Missouri, Article V, § 3, V.A.M.S.; § 477.040, RSMo 1959, V.A.M.S.

Employee was injured when a forklift truck operated by him on employer's premises ran off a loading dock, pinning his right leg under the truck. Employer and insurer denied any liability under the Act on the ground that the injury did not arise out of or in the course of his employment but happened while employee was engaged in unauthorized activity in violation of express instructions never to operate the truck because of his poor eyesight.

The referee denied compensation for failure of employee "to prove that he sustained an accident arising in the course of his employment." The industrial commission reversed the referee's award and allowed compensation, including in its findings of fact the following: "Employee denied that employer's foreman told him not to drive the truck," and "We do not find that employee was specifically forbidden by employer to operate any one of these forklift trucks." The commission refused to elaborate on this finding on motion of employer and insurer, holding that its findings were sufficient to comply with statutory requirements and that the ultimate constitutive facts appear in reasonable detail. The circuit court affirmed on appeal. Employer and insurer have appealed from the circuit court judgment.

Enriquez was employed to tend an extruding machine. It was part of his duties to move boxes, barrels, skids and other materials from one part of the plant to another. In the operation of the extruding machine it was his duty, among other things, to procure and have ready at the machine "skids" or wooden platforms, which weighed 60 pounds each. The packaged material produced at the machine was hauled away on these skids. The production required about 3 or 4 skids during an 8-hour shift. Ordinarily he carried these to the machine by hand, one at a time, or other employees brought them on forklift trucks. Three trucks were provided by the employer for the use of the employees in the performance of their duties, for heavy lifting and transfer of heavy objects from one place to another in the plant. Almost all of the employees used the lift truck on one occasion or another. "Practically everybody" used them, although some of the employees drove them only occasionally. Their use was not confined to certain assigned drivers. "Anybody could use [them] if they were moving anything which was heavy, like a box, * * *." When more skids were needed at the extruding machine either Enriquez would procure them by hand or an employee "would just jump on" a truck and go get them. There were three shifts and three men were working on this operation at the extruding machine and all three of them would drive the trucks; except that Enriquez had not operated any of the forklift trucks before the accident during the 6 months that he had been working there.

No instructions were given employees when they went to work concerning the use of the trucks. "You just got on them and drove them." The management made no

mention about the use of the trucks. There were no rules or limitations on what people could drive these lift trucks. Employee testified as follows: "Now, Mr. Enriquez, right after you went to work there, didn't Curtis Storey, your foreman, when Butcher was there, tell you that you were not to operate the fork lift truck and to keep away from the heavy machinery because of your poor eye sight? A No, sir. Q Is it your testimony he didn't tell you, or is it your testimony that you don't remember it? A I don't recall it. Q You don't recall it. Now then, before this accident had you ever asked Curtis Storey, or Butcher, for permission to operate this fork lift truck? A No, sir." He further testified that no one ever told him not to go over where the heavy machinery was, inside the building, and that he used the band saw there "a couple of times."

On the occasion in question employee sat on top of a forklift truck to eat his lunch. After finishing his lunch a "person" whose name employee could not remember ("a big heavy-set fellow") came by, turned the motor on by turning the starter switch, and asked employee "to get some skids" from the other side of the dock. Employee put the truck in gear, turned and operated the truck. In so doing the truck went off the docks. He applied the brakes as far down as he could pressing them 2 or 3 times, but they did not hold and the machine ran off the dock to the level of the railroad track 4 or 5 feet below. Six employees testified that the brakes were defective.

Employer-insurer's evidence showed that employee had defective eyesight; that his foreman and the supervisor saw him operating a forklift truck about a month and a half after he started work there; that the supervisor told the foreman that Enriquez was not to drive "and go down and tell him so"; that the foreman told him that "it would be best for him not to be driving the forklift on account of his vision," and that he should watch out, be careful on the heavy mixers and stay away from the machinery.

On this appeal employer and insurer first claim that there is no substantial, competent evidence that claimant had been authorized or permitted by employer to operate the forklift truck, or that employer had acquiesced in his operation of the truck or from which it could be inferred that he was so authorized, or that employee was acting within the scope and sphere of his employment. Second, they assert that the award was contrary to the overwhelming weight of the evidence; that the finding that employee was not specifically forbidden to drive the truck was unjustified by the evidence, and that the commission arbitrarily disregarded and ignored competent, substantial and unimpeached evidence that employee had been forbidden to operate the truck.

■ Considering these two evidential points together we have concluded that there is sufficient competent and substantial evidence in the record to support the finding of the commission that the accident arose out of and in the course of the employment; that the award was not contrary to the overwhelming weight of the evidence; that there was evidence pro and con on the question whether employee was specifically instructed not to operate the forklift truck, and that in resolving this fact question in employee's favor the commission was not acting arbitrarily but was properly exercising its fact-finding function.

■ Although there is no direct evidence that employee was specifically authorized to operate the truck and notwithstanding he admitted that he did not ask for permission to do so, there is substantial circumstantial evidence of implied authority. There is no evidence indicating that it was customary for employees to obtain permission before using the trucks. On the contrary, the evidence indicates that no such permission was customarily sought or obtained. The trucks, furnished by the employer, were around and about the employer's premises, available for the use of any employee needing them in the prosecution of employer's work. There

were no regular or assigned drivers. "Practically everybody" used them from time to time, some only occasionally, this employee only once. Those tending the extruding machine customarily and regularly used these forklift machines. Their use was not confined to those who had been specially trained to operate them; no formal training of those authorized to use the trucks was required or provided by employer; any employee desiring to use one of the trucks to do employer's work simply got on the truck and started operating it. There were no rules or limitation as to who should operate them. *Employee testified positively that his foreman did not tell him that he was not to operate these trucks.* Under these circumstances the employees, including claimant, had implied authority to use the trucks when in their judgment it was necessary to do so in performing the duties of their employment. While he was sitting on one of the trucks another person, whom it may be inferred was an employee, started the motor and told Enriquez to get some skids.

In going after the skids Enriquez was performing a task which he was employed to perform, one within the ambit of his daily duties. In so doing he was acting in furtherance of his employer's business. Instead of undertaking to procure a skid in his accustomed manner he undertook on this occasion, apparently by reason of the special circumstances, to procure them by using the forklift machine. In so doing he was not doing something outside the scope and course of his employment. He was merely adopting a different method or manner of performing one of his regular duties. He was doing something within the scope and course of his employment, notwithstanding he was doing it by a different means and in a different manner.

Employer and insurer, assuming the truth of their evidence that Enriquez had been definitely instructed not to use the machine, and claiming that this evidence was undisputed, cite Fowler v. Baalmann, Inc., Mo. Sup., 234 S.W.2d 11 and Kasper v. Liberty Foundry Co., Mo.App., 54 S.W.2d 1002, for the proposition that compensation is to be denied when an employee goes outside the scope and sphere of his employment and is injured in performing an activity which he has been expressly forbidden to undertake. The rulings in those cases, however, have no application here. This evidence was directly contradicted by employee and the fact-finding body has rejected this evidence in these words: "We do not find that employee was specifically forbidden by employer to operate any one of these forklift trucks." The commission made a positive finding that "Employee denied that employer's foreman told him not to drive the truck."

Employer and insurer argue, however, that because Enriquez added "I don't recall it," when pressed on the matter, that his testimony was meaningless, lacked probative value, was insufficient to constitute a denial of the foreman's testimony, and therefore the commission arbitrarily ignored and disregarded unimpeached testimony that Enriquez had been forbidden to operate the trucks. They cite Haire v. Stagner, Mo. App., 356 S.W.2d 305; Globe Automatic Sprinkler Co. v. Laclede Packing Co., Mo. App., 93 S.W.2d 1053; Little v. Manufacturers Ry. Co., Mo.App., 123 S.W.2d 220; Van Bibber v. Swift & Co., 286 Mo. 317, 228 S.W. 69 and Inman's Adm'x v. United Rys. Co. of St. Louis, 157 Mo.App. 171, 137 S.W. 3, in support of the contention that employee's testimony on this issue is without value. In none of these cases did the witness give any positive testimony. In them the testimony of the witnesses consisted of disclaimers of knowledge or recollection, which of course "are an unsatisfactory and unacceptable substitute for evidence." Haire v. Stagner, supra, 356 S. W.2d l. c. 311.

Next, employer and insurer make the point that the commission misinterpreted the law and misapplied the law to the facts, in finding that employee was operating the truck to procure skids for use in and in furtherance of the employer's business and

then concluding that that use related only to the manner or method by which employee accomplished his duty, and that he was not doing something outside the sphere of his employment. This point is based upon the assumption that employee had neither express nor implied authority to operate any of the trucks. Since as an employee he had implied authority to do so, and since under the facts as found by the commission Enriquez had not been forbidden to do so, the argument fails. Fowler v. Baalmann, Inc., supra, cited in this connection, has no application to the facts of this case. In Fowler the commission found that the employee, an airplane pilot, contrary to express orders of his employer not to fly on a night when weather conditions were bad, orders expressly communicated to the pilot, took the plane up after the flight had been cancelled, the plane had been placed in the hangar and the pilot had been so advised. Nor is the Kasper case, supra, helpful because it is so different on the facts. In that case claimant, a molder, in violation of strict rules known to claimant, that molders could not grind their own castings, went into a department of the plant where he was positively forbidden to go, for his own financial gain, and while grinding a molding was struck in the eye by a piece of emery wheel. The commission did not misinterpret or misapply the law in the case here for review.

Finally, employer and insurer contend that the commission improperly denied their request for amplification and clarification of its findings and conclusions, and that the judgment should be reversed for noncompliance with the commission's duty to make findings sufficiently specific that the reviewing court may judge whether the findings themselves are supported by the evidence in the record and whether the facts so found are legally sufficient to support the determination. They say the award does not make straightforward findings and leaves in obscurity whether employer had authorized Enriquez to operate the trucks; on what authority or permission he was operating the truck when injured, and whether the operation was one of his assigned duties as distinguished from its use when operated by other employees. Without burdening this opinion with a verbatim recital of the findings dealing with the right of employeees to use the trucks it will be sufficient to say that their plain and unmistakable import is that employer furnished trucks for use by any of the employees as needed, without instruction as to how they should be driven, and that employee was not specifically forbidden to operate any one of them. The record plainly shows that no employee had express authority to use the trucks; that the trucks customarily were used by all employees as needed, without limitation, restriction or rule. In view of the custom and practice there was no need to show that Enriquez was specifically authorized to operate the truck. It is objected that the basis for the finding that Enriquez had not been forbidden to drive the truck cannot be determined from the paragraphs and context of the findings. The basis is the commission's recital that "Employee denied that employer's foreman told him not to drive the truck."

We recognize the rule in Michler v. Krey Packing Co., 363 Mo. 707, 253 S. W.2d 136, and other cases cited, that the commission should make findings of fact which show the actual grounds of decision and which are sufficiently specific to make possible an intelligent judicial review. Findings of fact should be stated in affirmative terms, positively and not negatively. The findings of fact in this case, however, while not in model form, are sufficiently understandable on the main issue to enable us to make this review.

No error appearing the judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.